UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSANA GARCIA,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration,<br><br>        Defendant. | NO. ED CV 07-0056 SS<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

    Susana Garcia ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying her application for Disability Income Benefits ("DIB") benefits. Alternatively, she asks for a remand. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the decision of the Commissioner is REVERSED and REMANDED for further proceedings.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of list of specific impairments described in 20 C.F.R. Part 404,

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

>    Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.
> (4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.
> (5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"),[2] age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240

---

[2] Residual functional capacity is "what [one] can still do despite [his] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. §§ 404.1545(a), 416.945(a).

F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

4

# DISCUSSION

## A. The ALJ Failed To Properly Consider Dr. Hudson's Opinion

Plaintiff contends that the ALJ failed to properly consider treating psychiatrist Maria Hudson's evaluation of Plaintiff. (Jt. Stip. at 3). In 2004, Dr. Hudson evaluated Plaintiff as suffering from a major depressive disorder, recurrent. (AR 415). Dr. Hudson also found that Plaintiff's memory was mildly impaired and that she suffers from insomnia. (Id.). Dr. Hudson indicated that Plaintiff has depression and anxiety, with decreased energy, and that she would be unable to sustain repetitive tasks for an extended period or adapt to new or stressful situations. (Id.). Finally, according to Dr. Hudson, Plaintiff appeared anxious and would be unable to complete a forty-hour workweek without decompensating.

As Plaintiff notes, the ALJ did not discuss or mention Dr. Hudson's report in decision. The ALJ summarized his review of the mental health evidence and concluded that Plaintiff did not have a severe mental impairment prior to the date last insured. (AR 14). The ALJ's conclusion as well as his failure to consider Dr. Hudson's report was error.

The mere fact that Dr. Hudson's opinion was rendered in 2004, while the Plaintiff's date last insured was in June 2002, does not render Dr. Hudson's report irrelevant. A retrospective diagnosis, such as the one provided by treating psychiatrist, Dr. Hudson, "is relevant to the

5

determination of a continuously existing disability with onset prior to expiration of insured status." Flatten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1461 n.5 (9th Cir. 1995); see also Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1995) ("[M]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpriation condition.") (quoting Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988)); Stevens v. Sec'y of Health & Human Servs., 689 F. Supp. 517 (W.D. Pa. 1998) (noting that disabling psychological impairments often manifest before an official diagnosis is obtained).

Here, there is significant evidence in the record of a severe mental impairment existing prior to the expiration of Plaintiff's insured status. This medical evidence, described more fully in Section B, below, combined with Dr. Hudson's opinion, should have been considered by the ALJ. If the ALJ intended to reject Dr. Hudson's opinion, he was required to provide specific and legitimate reasons. His failure to do so, or to consider this evidence at all, requires remand.

### B. The ALJ Failed To Properly Assess Plaintiff's Mental Health Impairment At Step Two of the Evaluation Process

Plaintiff contends that the ALJ erred by finding that she does not suffer from a severe mental impairment. (Jt. Stip. at 9). For the reasons discussed below, the Court finds that the ALJ failed to properly assess Plaintiff's mental health impairment.

By its own terms, the evaluation at step two is a **de minimis** test — intended to weed out the most minor of impairments. See Bowen v. Yuckert, 482 U.S. 137, 153-154, 107 S. Ct. 2287, 2299-2300, 96 L. Ed. 2d 119 (1987)(O'Connor, J. concurring); Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001)(the step-two inquiry is a de minimis screening device to dispose of groundless claims)(quoting Smolen v Chater, 80 F.3d 1273, 1290 (9th Cir. 1996)).

The ALJ here applied more than a de minimis test at step two when he determined that Plaintiff's mental impairment was not severe. He improperly discounted evidence in the record that would establish a severe impairment. Finally, he failed to follow the Secretary's own regulations governing the evaluation of mental impairments, as described below.

Where there is evidence of a mental impairment that allegedly prevents the plaintiff from working, the Agency has supplemented the five-step sequential evaluation process with additional regulations. Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d 913, 914-15 (9th Cir. 1998) (citing 20 C.F.R. § 416.920a) (per curiam). First, the ALJ must determine the presence or absence of certain medical findings relevant to the plaintiff's ability to work. 20 C.F.R. § 416.920a(b)(1). Second, when the plaintiff establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. § 416.920a(c)(2-4). Third, after rating the degree of loss, the ALJ must determine whether the claimant

has a severe mental impairment. 20 C.F.R. § 416.920a(d). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920a(d)(2). Finally, if a listing is not met, the ALJ must then assess the plaintiff's RFC, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding he plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§ 4163920a(c)(3)]." 20 C.F.R. § 416.920a(d)(3), (e)(2).

The regulations describe an impairment as follows:

> A physical or mental impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques[]. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a plaintiff's] statements of symptoms.

20 C.F.R. § 416.908; see also Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 2005) (noting that the existence of a medically determinable physical or mental impairment may only be established with objective medical findings) (citing SSR 96-4p, 1996 WL 374187, at *1-2). These regulations were not followed by the ALJ in the present case.

Here, the record includes a treating clinician's letter dated July 16, 2004, which describes the clinician's mental health treatment of Plaintiff dating back to October 2000. (AR 400-401). The ALJ did not consider this evidence. This evidence, alone, would be sufficient to show that Plaintiff's assertion of a severe mental health impairment was not "groundless." In addition, psychiatrist Evelyn Edelmuth removed Plaintiff from work for thirty days in August 2001. (AR 179). Plaintiff was also evaluated by a psychologist, Dr. Nogales, in 2003. (AR 200-2004). Dr. Nogales' report documents in detail Plaintiff's serious mental health issues dating back to 1999 and continuing to 2004. (Id.). Again, the ALJ did not discuss this report or the other relevant mental health records.

The ALJ's conclusion that Plaintiff did not suffer from a severe mental impairment prior to her date last insured was error. On remand, the ALJ must specifically evaluate the medical evidence and follow the agency's own regulations concerning mental health evaluations. After considering all the evidence, the ALJ must include consideration of Plaintiff's mental health impairments when evaluating her residual functional capacity.

C. **Remand is Required To Remedy Defects In The ALJ's Decision**

Remand for further proceedings is appropriate where additional proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038, 121 S. Ct. 628, 148 L. Ed. 2d 537 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). Because the ALJ improperly evaluated

Plaintiff's mental health impairment at step two, the case must be remanded to remedy this and other defects.

Upon remand, the ALJ must conduct the supplemental evaluation of mental impairment evidence. Normally, the ALJ must first determine the presence or absence of certain medical findings relevant to the plaintiff's ability to work. 20 C.F.R. § 416.920a(b)(1). However, this Court has determined that there is objective medical evidence that Plaintiff suffers from a mental impairment relevant to her ability to work. Thus, the ALJ need not address this question. Accordingly, the ALJ must only complete the remaining inquiries required in the supplemental evaluation of mental impairment evidence.[3]

---

[3] Specifically, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. 20 C.F.R. § 416.920a(c)(2-4). Next, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. 20 C.F.R. § 416.920a(d). If the mental impairment is found to be severe, the ALJ must determine if it meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920a(d)(2). Finally, if a listing is not met, the ALJ must then assess the plaintiff's RFC, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding he plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§ 4163920a(c)(3)]." 20 C.F.R. § 416.920a(d)(3), (e)(2).

## CONCLUSION

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[4] IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: January 17, 2008.

/S/

_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

---

[4] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."